J-A28040-19

2020 PA Super 38

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALKIOHN DUNKINS | : | |
| | : | |
| Appellant | : | No. 1003 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 4, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0001577-2017

BEFORE:  PANELLA, P.J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                **FILED FEBRUARY 12, 2020**

Appellant Alkiohn Dunkins appeals the judgment of sentence entered by the Court of Common Pleas of Northampton County after a jury convicted Appellant of Robbery, Conspiracy to Commit Robbery, Receiving Stolen Property, and Simple Assault.[1]  Appellant claims the trial court erred in refusing to suppress wireless internet connection records that were obtained by campus police at Moravian College in a warrantless search.  Appellant also challenges the sufficiency and weight of the evidence supporting his convictions.  We affirm.

On February 2, 2017, at approximately 2:00 a.m., on the Moravian College campus in Bethlehem, Pennsylvania, two men wearing ski masks pretended to be campus police to gain access to the dorm room shared by Greg Farina and William Reilley, a Moravian student known to sell marijuana

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, 3925(a), and 2701(a)(1), respectively.

on campus. Notes of Testimony ("N.T."), Trial, 9/4/18, at 31-38; 9/5/18, at 152-57. When Farina opened the dorm door, one of the masked men punched Farina, causing him to fall. *Id*. The masked men held the students at gunpoint and demanded marijuana and the key to Reilley's footlocker. *Id*. The masked men accessed the footlocker and took approximately $1,000 in cash as well as a jar of marijuana. *Id*. Before leaving the dorm, the perpetrators hit Reilley and Farina on the sides of their heads. *Id*.

Several hours later, around 11 a.m., Reilley reported the robbery to campus officials. N.T., 9/4/18, at 39-40; 9/5/18, at 159. Campus Police Officer Thomas Appleman requested that Moravian's Director of Systems Engineering, Christopher Laird, analyze its wireless network (WiFi) data to compile a list of the students logged on to the network near the wireless access point in the dormitory building where Reilley and Farina resided.[2] N.T., Pre-trial motion Hearing, 4/19/18, at 40-43; N.T. Trial, 9/5/18, at 215-19. Campus officials discovered, at the time of the robbery, there were only three individuals logged onto the campus WiFi at that location that did not reside in that building. N.T., 9/5/18, at 218-19. Two of the three WiFi users were female. The male user was Appellant, who was also a Moravian student. N.T. Hearing, 4/19/18, at 44, N.T. 9/5/18, at 219.

---

[2] Laird indicated that Moravian utilizes approximately 1,100 wireless network access points placed throughout the campus in order to offer its students and faculty nearly seamless Internet connection. N.T., 4/19/18, at 27-29.

Thereafter, Officer Appleman provided this data to Detective James Ruvolo of the Bethlehem Police Department, who took over the investigation. Reilley told Detective Ruvolo that Appellant previously "robbed" him by taking marijuana from him without payment in return. N.T., 9/4/18, at 41, 49. When Appellant was interviewed, he denied being in the Hassler dormitory since October 2016. *Id*. at 54.

Colin Zarzecki, who lived in in the dorm room next to Appellant's, told police that Appellant came to his room after midnight on February 3, 2017, "fanned out" a display of cash, and bragged that he obtained this money in a recent robbery. N.T., 9/5/18, at 102, 107. Appellant boasted that he and another individual posed as campus police officers to gain access to the victim's room and subsequently stole drugs and money from the victim's footlocker. *Id*. at 102-105, 124-25.

After Appellant was arrested and charged with the aforementioned offenses, Appellant filed a suppression motion, arguing that the campus police conducted an illegal search in obtaining the campus WiFi log-on data without first obtaining a warrant. At one of the suppression hearings held by the trial court, Moravian Systems Engineering Director Laird explained that, in order to utilize Moravian campus WiFi, each student must log on to the network with their individual username and password. However, at their initial log-on, students may choose to have their devices automatically log on to the campus WiFi without entering their credentials again. N.T., 4/19/18, at 27.

The parties also noted that Appellant had signed the Moravian Student Handbook when enrolling at the college, indicating that he accepted and understood Moravian's policies, including the following technology rules:

> Logging in to or otherwise connecting to the campus network implies acceptance of this Moravian College … Policy. …
>
> ***
>
> The institution's computing equipment and network resources are dedicated to Moravian business to enhance and support the educational mission of Moravian College. These resources include all computers, workstations, and multi-user computer systems *along with local area networks and wireless networks* via the Internet.
>
> ***
>
> [A]ny data transmitted over institutional assets or *connections made through institutional assets are included.* The institution has the right to inspect information stored on its system at any time, for any reason, and *users cannot and should not have any expectation of privacy with regard to any data*, documents, electronic mail messages, or other computer files *created or stored on computers within or connected to the institution's network*. All Internet data composed, transmitted, or received through the Internet's computer system is considered part of the institution's records and, as such, *subject at any time to disclosure to institutional officials, law enforcement, or third parties*…

N.T. 4/19/18, at 10-23; Defense Exhibit 1 (emphasis added). On April 26, 2018, the trial court denied Appellant's suppression motion.

At the conclusion of Appellant's trial, on September 5, 2018, the jury convicted Appellant of Robbery, Conspiracy to Commit Robbery, Receiving Stolen Property, and Simple Assault. On November 21, 2018, Appellant filed a motion for extraordinary relief, which was subsequently denied. On January 4, 2019, the trial court imposed an aggregate sentence of five to ten years'

imprisonment. On January 10, 2019, Appellant filed a post-sentence motion, which the trial court denied on March 1, 2019. Appellant filed a timely notice of appeal on March 19, 2019 and complied with the trial court's direction to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

1. Whether the Court erred by denying [Appellant's] Motion to Suppress the cell site location information purportedly tracking his cellphone and/or his Motion for Extraordinary Relief requesting the same?

2. Whether the evidence at trial was insufficient to sustain the Commonwealth's burden with respect to all charges as there was insufficient evidence to indicate that [Appellant] conspired with another to commit the instant offense?

   a. Whether there was sufficient evidence as to [Appellant's] identity as one of the perpetrators and/or conspirators?

3. Whether the verdict was against the weight of the evidence as while there was evidence that [Appellant's] cell phone was in the vicinity of the Robbery, there was no evidence that [Appellant] had the phone at the time of the Robbery nor was there any evidence that [Appellant] was present at the scene and the witness who proffered that [Appellant] admitted to a Robbery was unworthy of belief?

Appellant's Brief, at 10.

We first review Appellant's claim that the trial court erred in denying his suppression motion. Our standard of review is as follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the

suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa.Super. 2019) (citations and quotation marks omitted). In addition, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa.Super. 2016) (*citing In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1087 (2013)).

Appellant contends the campus police conducted an illegal search by accessing Moravian's wireless internet connection records without first obtaining a warrant. Appellant claims the officers invaded his right to privacy in his physical movements through cell site location information (CSLI).

The Fourth Amendment of the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.[3] Our courts

_____

[3] While not explicitly stated in the record, the parties agree that Moravian Police Officer Appleman was deemed a state actor subject to the Fourth Amendment as he acted as an agent of the state in accessing the college's wireless information. *See Commonwealth v. Yim*, 195 A.3d 922, 927 (Pa.Super. 2018), *appeal denied*, 204 A.3d 919 (Pa. 2019) (quoting *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921))

- 6 -

have recognized that "[t]he protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. ***Commonwealth v. Cruz***, 166 A.3d 1249, 1254 (Pa.Super. 2017) (quoting ***Commonwealth v. Brundidge***, 533 Pa. 167, 172–73, 620 A.2d 1115, 1118 (1993)).[4]

Appellant claims this case is controlled by ***Carpenter v. U.S.***, ___U.S.___, 138 S.Ct. 2206 (U.S. June 22, 2018), in which the U.S. Supreme Court found law enforcement officials improperly acquired Carpenter's CSLI without a warrant. In that case, Carpenter was a suspect in a string of armed robberies. Officers compelled Carpenter's wireless carriers to provide a record of Carpenter's historical CSLI for a four-month period, allowing the officers to

---

(emphasizing that "[t]he Fourth Amendment's protection against unlawful searches and seizures applies only to actions by the government, as "[i]ts origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority[.]"

At the suppression hearing, Officer Appleman indicated that as a Moravian College campus police officer, he was responsible for ensuring campus safety and investigating crimes. N.T., 4/19/18, at 58. Officer Appleman indicated that all Moravian police officers have Act 120 certification (or an applicable waiver) and are permitted to carry firearms, make arrests, and initiate criminal proceedings. ***Id***. at 58-60. Officer Appleman indicated that campus officers were permitted to take any action "that a police officer for a municipality or a state policeman could do." ***Id.*** at 59.

[4] Appellant has not argued that he is entitled to greater protection under the Pennsylvania Constitution. ***See Commonwealth v. Edmunds***, 526 Pa. 374, 586 A.2d 887, 895 (1991) (setting forth a four-factor analysis which an appellant must analyze to present a claim for higher protection under the Pennsylvania Constitution).

track Carpenter's movements during the time when the robberies had occurred.[5] **Carpenter**, 138 S. Ct. at 2212.

Although the Court recognized an individual has a reduced expectation of privacy in information knowingly shared with another, the Court found the "nature of the particular documents sought" must be considered to determine whether there is a legitimate expectation of privacy. **Id**. at 2219. The Supreme Court recognized that modern cell phones generate time-stamped records known as CSLI when the phone continuously scans for the best signal from the closest cell site and connects to that cell site. **Id**. at 2211. Such information is collected by wireless carriers for business purposes to improve their network and to bill customers who incur "roaming" charges through another carrier's network. **Id**. The Supreme Court also noted that an electronic device will log CSLI simply through the user's operation of the phone on the carrier network "without any affirmative act on the part of the user beyond powering up." **Id**. at 2220.

Emphasizing that "cell phones and the services they provide are such a pervasive and insistent part of daily life that carrying one is indispensable to participation in modern society," the Supreme Court concluded that the officers invaded Carpenter's reasonable expectation of privacy in his physical

---

[5] Law enforcement in **Carpenter** obtained court orders to access to this CSLI without a warrant under the Stored Communications Act which allowed the government to request certain telecommunications records when it "offers specific and articulable facts showing that there are reasonable grounds to believe" that the records sought are "relevant and material to an ongoing investigation." 18 U.S.C. § 2703(d).

movements by collecting the historical CSLI without a warrant as the search provided "a comprehensive chronicle" of the appellant's physical movements over a four-month period. *Id*. at 2211, 2219-20.

However, while the Supreme Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," the Supreme Court pointed out that the holding in *Carpenter* was not simply about "using a phone" or "a person's movement at a particular time." *Id*. at 2217, 2220. Further, the Supreme Court emphasized that its decision was "narrow" and indicated that it was not expressing a view on real-time CSLI or "tower dumps" ("a download of information on all the devices that connected to a particular cell site during a particular interval"). *Id*. at 2220. The Supreme Court added that its decision was not calling in to question "conventional surveillance techniques and tools, such as security cameras … or business records that might incidentally reveal location information." *Id*.

In this case, Appellant fails to acknowledge the *Carpenter* decision did not invalidate "tower dump" requests by law enforcement to identify all of the devices that were connected to one particular cell site during a particular interval. This action by campus police in this case is akin to a "tower dump" request as campus security sought general network connection information from one of Moravian's wireless access points near the location of the robbery at the time it occurred.

The campus police did not target a specific individual or attempt to track an individual's movements but instead merely sought to compile a list of all the devices signed on to the WiFi in the Hassler dorm at the time of the robbery. Using the process of elimination, campus officials were able to determine that, at the time of the robbery, Appellant was the only male student logged on to campus WiFi at the Hassler dorm who did not reside in that location.

Appellant also does not appreciate the difference between the CSLI obtained in *Carpenter* and the WiFi data obtained in this case. Whereas CSLI tracks an individual's movements at all times of the day regardless of where he travels, the WiFi data in this case is only collected when an individual logs onto the campus wireless network and is present on the Moravian campus.

We agree with the trial court's observation that the Moravian WiFi network is confined to the college campus and offered as an available option to students and faculty. When college officials seek to determine which students are logged on to the network near a particular wireless access point at a particular time, the private wireless network functions similarly to a security camera that may exist at the college. As such, the decision in *Carpenter* does not invalidate the warrantless search in this case.[6]

---

[6] In attempting to suppress the limited wireless network information obtained in this case, Appellant does not recognize the distinction between a specific request for a compilation of an individual's historical CSLI and a general request for "tower dump" information or similar data from a particular cell

Moreover, Appellant cannot reasonably argue that he was subjected to an illegal warrantless search under the Fourth Amendment when he specifically consented to Moravian's internet use policy, which clearly stated that individuals who choose to utilize the campus computer system and wireless network provide authorization for the college to collect and disclose all internet data composed, transmitted, or received through the campus computer system and its network connections.

This Court has held that "[i]f a person is aware of, or freely grants to a third party, potential access to his computer contents, he has knowingly exposed the contents of his computer to the public and has lost any reasonable expectation of privacy in those contents." *Commonwealth v. Sodomsky*, 939 A.2d 363, 369 (Pa.Super. 2007). *See also U.S. v. Simons*, 206 F.3d 392 (4th Cir. 2000) (finding employee had no legitimate expectation of privacy in his internet activity when the employer's policy clearly stated that all internet activity would be audited, inspected, and monitored by the employer).

Moreover, other jurisdictions have recognized that "[a] defendant can voluntarily consent in advance to a search as a condition of receiving

_____

tower or wireless access point for a particular time. Appellant does not specifically argue that the decision in *Carpenter*, which the Supreme Court characterized as "narrow," should be extended to require law enforcement to obtain a warrant before seeking "tower dump" information or similar requests. In the absence of meaningful analysis from Appellant on this issue, we decline to review this issue further. *See Commonwealth v. Roney*, 622 Pa. 1, 28, 79 A.3d 595, 610 n. 12 (2013) (finding sub-issue to be waived for lack of development with argument, citation to authority, or analysis).

contracted services." ***United States v. Adkinson***, 916 F.3d 605, 610 (7th Cir. 2019), *cert. denied*, 139 S. Ct. 2762, 204 L. Ed. 2d 1146 (2019) (citing ***Medlock v. Trustees of Indiana University***, 738 F.3d 867 (7th Cir. 2013)).[7]

In ***Adkinson***, the United States Court of Appeals for the Seventh Circuit found that the appellant provided voluntary consent to a search of his cell-site information as a condition of using a phone serviced by T-Mobile, as the parties' use agreement authorized T-Mobile to disclose such information "when reasonably necessary to protect its rights, interests, property, or safety, or that of others." ***Id***. As such, the Seventh Circuit found T-Mobile was permitted to give law enforcement "tower dump" information it obtained from cell sites near one of its stores that was robbed at gunpoint.[8] ***Id***.

---

[7] We consider the ***Simons***, ***Adkinson***, and ***Medlock*** decisions from federal circuit courts to be persuasive authority. This Court has provided that:

> absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved. When considering a given issue, however, we prefer Third Circuit decisions to those of other federal circuits, to discourage litigants from 'crossing the street' to obtain a different result in federal court than they would in Pennsylvania court. If, however, the Third Circuit has no law on a given question, we may seek guidance in the courts of appeals and district courts in other circuits.

***Graziani v. Randolph***, 856 A.2d 1212, 1218 (Pa.Super. 2004) (quoting ***Werner v. Plater–Zyberk***, 799 A.2d 776, 782 (Pa.Super. 2002)).

[8] The Seventh Circuit also found that T-Mobile's disclosure of CSLI to law enforcement was permissible under the private search doctrine and was not invalidated by the decision in ***Carpenter***, which did not apply warrantless "tower dump" requests. ***Adkinson***, 916 F.3d at 611.

Similarly, in **Medlock**, the Seventh Circuit reasoned that Medlock had not been subjected to an illegal search of his dorm room by resident leadership when he had given explicit consent to have his room searched for contraband and other evidence for any violations of the health and safety codes as a condition of Medlock being permitted to live in an on-campus dormitory. **Medlock**, 738 F.3d at 872 (7th Cir. 2013) (observing that Medlock could have lived off campus but instead "chose to trade some privacy for a dorm room").

Likewise, prior to the robbery in this case, Appellant signed a "Computing Resources" policy indicating that he understood that, in exchange for the privilege of accessing Moravian's WiFi network, Moravian had the right to collect, inspect, and share internet data transmitted over institutional assets or connections made through institutional assets. N.T. 4/19/18, at 10-23; Defense Exhibit 1. The policy explicitly stated that "logging into or otherwise connecting to the campus network implies acceptance of this Moravian … Policy." **Id**.

We agree with the trial court's finding that the plain language of the policy "informs users of the campus wireless network that any connections made to that network are subject to inspection by the College at any time, as well as disclosure to law enforcement, and that users have no expectation of privacy in that electronic information." Trial Court Opinion, 4/26/18, at 3.

As such, Appellant agreed to surrender some privacy rights to have his cell phone access Moravian's WiFi network to assist him in his pursuit of a college degree at Moravian. Appellant was not required to log in or to maintain

a constant connection to the campus WiFi network, but could have chosen to have his device access the internet through a wireless carrier or simply signed off the Moravian wireless network temporarily to avoid transmitting location data. For the foregoing reasons, Appellant was not entitled to suppression of the wireless network data that was lawfully obtained by campus police.

Appellant also challenges the sufficiency of the evidence supporting his convictions. Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Leaner*, 202 A.3d 749, 768, (Pa.Super. 2019) (citation omitted). To reiterate, the jury, as the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). In conducting review, the appellate court

may not weigh the evidence and substitute its judgment for the fact-finder. *Id.* at 39-40.

***Commonwealth v. Baumgartner***, 206 A.3d 11, 14–15 (Pa.Super. 2019).

As noted above, Appellant was convicted of robbery, conspiracy to commit robbery, and related offenses. To sustain a robbery conviction, the Commonwealth must show that the defendant "in the course of committing a theft, … threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(ii). Further, criminal conspiracy is defined as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

Appellant specifically claims there was insufficient evidence to show he was one of the perpetrators who committed the charged crimes, as the prosecution could not definitively prove Appellant was the individual that was in possession of his phone near the victim's dorm at the time of the robbery. Appellant asserts that the Commonwealth was required to present records of calls or text messages to prove that Appellant was the individual in possession of the phone during the relevant time period.

We acknowledge that "cellular phones are not always exclusively used by the person to whom the phone number is assigned." *Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa.Super. 2011). However, as noted above, a perpetrator's identity may be established with circumstantial evidence. *Baumgartner*, *supra*. This Court has recognized that "[e]vidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa.Super. 2016) (citing *Commonwealth v. Jones,* 954 A.2d 1194, 1197 (Pa.Super. 2008)).

As noted above, Appellant was considered a suspect in the target offenses after Moravian network access records revealed that Appellant was the only male student who did not reside in the Hassler dorm that had a device signed onto the Moravian WiFi network on that particular network access point at the time of the robbery.

The prosecution presented additional evidence to corroborate the identity of the individual in possession of Appellant's cellphone near the victim's dorm room at the time of the robbery. Colin Zarzecki, Appellant's neighbor, told police that Appellant came to his room the morning of the robbery, "fanned out" a display of cash, and bragged that he had just robbed another student on campus. Appellant told Zarzecki that he and another individual had posed as campus security officers to gain access to the victim's dorm room and had obtained drugs and money out of the victim's footlocker. *Id*. at 102-105, 124-25.

In addition, when Reilley was interviewed by police, he acknowledged that he knew Appellant from a previous encounter where Appellant had "ripped him off" by taking marijuana from him without payment. N.T., 9/5/18, at 41, 49. We agree with the trial court's assessment that there was sufficient evidence to show Appellant was the one of the perpetrators in the robbery.

In the alternative, Appellant also argues that there was insufficient evidence that he conspired with another individual to commit robbery. We are guided by the following principles:

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S.[A.] § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.
>
> Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

***Commonwealth v. Golphin***, 161 A.3d 1009, 1018–19 (Pa.Super. 2017) (citations and quotation marks omitted).

The record in this case contains evidence showing that Appellant planned and executed the robbery with another individual. The conduct of the perpetrators demonstrated they had devised a scheme to commit the robbery as both men wore ski masks to disguise their faces and pretended to be campus police officers to gain access to the dorm room of a student known to sell marijuana. While one man threatened the victim, Reilley, with a firearm, the other perpetrator obtained Reilley's key and stole $1,000 from Reilley's footlocker. The perpetrators also some marijuana from Reilley's desk and then hit both men in the head before escaping the scene. As a result, we agree with the trial court's assessment that there was sufficient evidence to support Appellant's conviction for conspiracy to commit robbery.

Lastly, Appellant contends that his convictions are against the weight of the evidence. Our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. ***Commonwealth v. Johnson***, 542 Pa. 384, 394, 668 A.2d 97, 101 (1995), *cert. denied,* 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996). An appellate court cannot substitute its judgment for that of the finder of fact. ***Commonwealth v. Pronkoskie***, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. ***Commonwealth v. Hawkins***, 549 Pa. 352, 368, 701 A.2d 492, 500 (1997), *cert. denied,* 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998).

> ***Commonwealth v. Small****,* 559 Pa. 423, 741 A.2d 666, 672–73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. ***Commonwealth v. Tharp****,* 830 A.2d 519, 528 (Pa.2003) (citations omitted).

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003).

Specifically, Appellant's weight claim is centered on his assertion that the testimony of prosecution witness Colin Zarzecki was not credible. Appellant points out that Zarzecki waited 21 days after the robbery to tell police that Appellant had confessed to the robbery of Reilley's dorm room, only to give conflicting testimony at Appellant's preliminary hearing that Appellant had not told Zarzecki anything about the robbery. After Zarzecki admitted he lied under oath at the preliminary hearing, he was convicted with lying under oath.

At trial, Zarzecki admitted he delayed reporting Appellant's confession as he had reservations about incriminating Appellant, who was his teammate on the Moravian football team. N.T. Trial, 9/5/18, at 100, 109-110. Zarzecki admitted that he lied during his testimony at the preliminary hearing because he was intimidated after seeing other Moravian football teammates had come to support Appellant at the preliminary hearing. ***Id***. at 112-115. Zarzecki indicated that he became "panicky," "upset," and "extremely nervous" as he

recalled a similar experience when he was younger during which he was threatened by another individual at gunpoint. *Id*. at 115-118.

While Appellant argues that Zarzecki's testimony was unworthy of belief due his admission of untruthfulness and subsequent conviction of a *crimen falsi* offense for lying under oath at the preliminary hearing, we decline Appellant's invitation to reassess the credibility of the prosecution witnesses and reweigh the evidence at trial. As it was exclusively within the jury's province to weigh these matters, the jury was free to believe Zarzecki's testimony. ***Champney***, ***supra***. As such, we conclude that the trial court did not abuse its discretion in denying Appellant's weight of the evidence claim.

For the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/12/20