J-S26021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH ROBERT MARKLE | : | |
| | : | |
| Appellant | : | No. 1030 MDA 2021 |

Appeal from the Judgment of Sentence Entered October 4, 2018
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000643-2017

BEFORE: KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                          **FILED: MAY 4, 2023**

Joseph Robert Markle (Appellant) appeals *nunc pro tunc* from the judgment of sentence entered in the Bradford County Court of Common Pleas after his jury conviction of conspiracy to commit possession with intent to distribute (PWID) methamphetamine.[1] On appeal, he challenges the admission of his recorded prison phone calls and the sufficiency of the evidence supporting his conviction. We affirm.

On November 10, 2016, Appellant and Carol Westefer, his girlfriend, sold methamphetamine to Sayre Borough confidential informant (CI) Harry Smith during a controlled buy. Appellant and Westefer were arrested for this transaction approximately 10 months later, and charged with conspiracy to

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 903(a)(1); 35 P.S. § 780-113(a)(30).

commit PWID.[2]  Appellant elected to proceed *pro se* during his preliminary hearing and throughout pre-trial proceedings.

Meanwhile, after the November 10, 2016, drug sale, but before he was charged criminally for that offense, Appellant was arrested for other unrelated drug offenses.  In March 2017, while incarcerated for these unrelated offenses, Appellant made phone calls to his mother in which he stated that he sold narcotics.  **See** Commonwealth's 404(b) Notice and Motion to Admit Evidence, 5/30/18, at 1-2 (unpaginated).  On May 30, 2018, the Commonwealth filed a Pa.R.E. 404(b) notice seeking to admit, *inter alia*, these phone calls, arguing the evidence demonstrated "identity, intent to deliver controlled substances, consciousness of guilt, and to prove [Appellant's] participation in the [November 10th] sale . . . was not that of an unwilling bystander."  **Id.** at 1.  The trial court scheduled a hearing on the admission of the Rule 404(b) evidence for July 17, 2018.  **See** Order, 6/4/18.  The court also granted Appellant's request for the appointment of standby counsel.[3]  **Id.**

During the July 17th hearing, Appellant was assisted by standby counsel Carrie Donald, Esquire, but continued to proceed *pro se*.  He informed the trial court that he would be asserting an innocent bystander defense at trial.  N.T.,

---

[2] Westefer was charged as a co-defendant but pleaded guilty to conspiracy to commit PWID.  Trial Ct. Op., 2/8/19, at 2.  She later sought to withdraw her guilty plea, but the trial court denied her motion.  **Id.**  As we discuss **infra**, she testified as a Commonwealth witness at Appellant's trial, but contradicted the admissions in her guilty plea.

[3] It is not apparent from the record when Appellant made this request.

7/17/18, at 10. Based on this information, the trial court granted the Commonwealth's motion to admit the Rule 404(b) evidence on the following conditions: (1) "the Commonwealth [must] first introduce evidence relevant to the [November 10, 2016,] drug transaction[;]" and (2) Appellant must then be afforded the opportunity to supplement the statements for "completeness and context." Order, 7/23/18; *see* N.T., 7/17/18, at 7, 10-11. The court also stated: (1) it would provide a limiting instruction to the jury explaining the evidence was not admitted to prove Appellant's character, but instead only to prove opportunity, intent, knowledge, lack of coincidence, or consciousness of guilt; and (2) based on Appellant's purported innocent bystander defense, the probative value of the evidence outweighed any potential prejudice. Order, 7/23/18. At the end of the hearing, Appellant informed the court that that standby counsel, Attorney Donald, would be taking over at trial. N.T., 7/17/18, at 25.

On August 8, 2018, this matter proceeded to a two-day jury trial, where the Commonwealth presented the testimony of CI Smith. *See* N.T., 8/8/18, at 115-16. Smith stated that Sayre Borough Police Officer Bruce Hoffman used his cell phone contact list to develop a list of potential drug dealers in the area. *See id.* at 116-17. Based on this information, Officer Hoffman coordinated Smith's controlled purchase of methamphetamine from Carol Westefer. *See id.* at 118-19. On November 10, 2016, Smith went to Westefer's home "between 2 and 6" in the afternoon to purchase methamphetamine. *Id.* at 118-20, 126. Westefer told Smith she did not have

any narcotics at that time, but to come back later that evening because "Joe[4] would be coming down" and she would "get it from him[.]" *Id.* at 120-21. Smith stated that he knew Appellant before November 10th because he had purchased methamphetamine from him between 10 to 15 times. N.T., 8/9/18, at 22. It does not appear these previous sales took place in Westefer's home. *Id.* Smith then testified that he returned to Westefer's home later that night after she told him "[Appellant] is here[,] you better hurry up cause . . . he's leaving." N.T., 8/8/18, at 121.

Before going to Westefer's home, Smith met with Officer Hoffman to retrieve pre-recorded buy money. N.T., 8/8/18, at 123. When Smith arrived at Westefer's home, Appellant and Westefer were in the kitchen and the narcotics were on the kitchen table. *Id.* at 123-24, 127. Smith noted that Appellant was "pretty nervous" during the encounter. *Id.* at 123. When Smith "went to hand [Appellant] the money[,]" Appellant "just shook his head[.]" *Id.* at 124, 127. Smith "believe[d]" that Appellant then pointed to Westerfer, so he handed her the money, which she proceeded to hand to Appellant. *Id.* at 124, 127. Appellant then stated, "I got to get the fuck out of here this place makes me uncomfortable as fuck. I don't like it down here" and left. *Id.* at 124, 128.

---

[4] The Commonwealth did not ask Smith or any other witnesses to identify Appellant at trial. Appellant, however, does not raise any claim related to mistaken identity.

On cross-examination, Attorney Donald asked Smith if Appellant sold Smith drugs on November 10, 2016. N.T., 8/8/18, at 132. The below interaction followed:

[Smith]: Him personally[,] I mean he never gave it to me, . . . it was on the table, . . . I just assumed it was his. . . .

[Attorney Donald]: You had no conversation with him though, correct?

[Smith]: No, no, not prior to this[,] no.

[Attorney Donald]: All your conversations . . . about that purchase of meth were with [Westefer?]

[Smith]: Correct.

[Attorney Donald]: And she took the money?

[Smith]: She took the money.

*Id.* at 132-33. Smith also stated that there was a third man in Westefer's home that he did not know, but was not "100% sure" if that man was present during both interactions that day. *Id.* at 135.

The Commonwealth then presented the testimony of Westefer. She acknowledged she entered a guilty plea to conspiracy on October 18, 2017. The facts provided as the basis for her guilty plea stated that on November 10, 2016, she "entered into an agreement with [Appellant] to deliver . . . methamphetamine to another individual[,]" and that she "was dealing with" Appellant. N.T., 8/8/18, at 168-69. Westefer did not contest the factual basis of her plea at the time it was entered. *Id.* at 168-70.

At Appellant's trial, Westefer recanted her admission and testified she was in a relationship with Appellant on November 10, 2016, and on that day,

he was in her home to "collect some money that [she] owed him for helping with the rent[;]" however, she claimed Appellant did not provide her with the methamphetamine sold to Smith. N.T., 8/8/18, at 165, 188.

The Commonwealth then played for the jury the recorded prison phone calls, in which Appellant spoke about past drug dealing activity. N.T., 8/8/18, at 222, 225-28. After this, the Commonwealth read into the record, the testimony of Bradford County Probation Officer Molly Murphy.[5] *Id.* at 231. Officer Murphy had interviewed Appellant in July 2017, in order to prepare a presentence investigation (PSI) report for Appellant on a separate matter. *Id.* at 234. During the interview, Appellant told Officer Murphy he "sold drugs for income but not for use." *Id.* at 236. The Commonwealth argued Officer Murphy's testimony was admissible for the same purpose as the recorded phone calls. *See* N.T., 8/7/18, at 2-3. Attorney Donald objected at the hearing, but the trial court stated it would admit the testimony under the same circumstances as the recorded phone calls. *See id.* at 2-3, 5.

At the conclusion of trial, the jury found Appellant guilty of conspiracy to commit PWID. On October 4, 2018, the trial court sentenced Appellant to 27 to 72 months' incarceration. Appellant filed a timely post-sentence motion,

---

[5] Officer Murphy was unavailable on the date of trial. The trial court allowed the Commonwealth to preserve her testimony at a hearing the day before. N.T., 8/7/18, at 1.

which was denied on February 8, 2019.[6]  On March 8, 2019, Attorney Donald filed a timely notice of appeal, but later failed to file an appellate brief.  This Court then dismissed Appellant's appeal.  **See** 430 MDA 2019, Order, 9/25/19.

Subsequently, Appellant filed a timely Post Conviction Relief Act (PCRA)[7] petition alleging Attorney Donald was ineffective for failing to file an appellate brief.  **See** Appellant's *Pro Se* Motion for Post Conviction Collateral Relief, 5/10/21.  The trial court appointed the Bradford County Public Defender's office to represent Appellant and thereafter entered an order, by way of stipulation, wherein the parties agreed that Appellant's appeal rights shall be reinstated, and he had 30 days from that order to file a notice of appeal *nunc pro tunc*.  **See** Order, 5/17/21; Stipulation of Counsel as to PCRA, 7/15/21.  On August 30, 2021, the Bradford County Public Defender's office filed a motion to withdraw from representation, which the trial court granted after a **Grazier**[8] hearing.  The court then appointed Jason Beardsley, Esquire, to represent Appellant.  With new counsel, Appellant filed a timely notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following claims:

---

[6] The trial court's order is dated February 8, 2019, but was not sent to Appellant until February 14, 2019.  **See** Criminal Docket No. CP-08-CR-0000643-2017, at 19.

[7] 42 Pa.C.S. §§ 9541-9546.

[8] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[1.] Did the [trial c]ourt commit reversible error by admitting impermissible character/propensity evidence/bad acts evidence — over trial counsel's objection — in the form of jailhouse recordings purportedly to show that . . . Appellant was familiar with the drug industry and that Appellant was not at a drug deal by mistake when in fact those recordings were admitted to show that . . . Appellant had acted in conformity with past drug dealing behavior and those instances that were spoken of in the recordings were not in any way related or shown to be similar to the drug deal that formed the basis of the conspiracy that . . . Appellant was convicted of, and when the prejudicial effect of that evidence so far outweighed any probative value that it should have been excluded and the recordings did not meet all of the requirements as a matter of law to be properly admitted as "bad acts" evidence?

[2.] Must . . . Appellant's conviction for conspiracy to commit [PWID] be vacated because there was insufficient evidence as a matter of law to sustain the conviction?

Appellant's Brief at 4.

In his first claim, Appellant argues the trial court abused its discretion when it admitted phone calls he made to his mother while incarcerated on an unrelated matter. Appellant's Brief at 10. By way of background, in a March 9, 2017, recorded prison phone call, the following exchange occurred: [9]

[Appellant's] Mother: . . . at the jail, I can't help ya.

[Appellant]: I know I'm at the jail Mom, you can't sell the heroin.

[Appellant's] Mother: Ya, well[.]

[Appellant]: What?

[Appellant's] Mother: You can't do the things you do.

---

[9] The Commonwealth presented additional phone call recordings, but they were inaudible or only partially audible. As such they were not accurately recorded in the transcripts. *See* N.T., 8/8/18, at 227-28. Appellant does not raise a challenge to the inaudible phone calls. *See* Appellant's Brief at 7-8, 9 n.2.

[Appellant]: Well I was selling drugs mom[.]  I wasn't doing them, I'm sorry.

[Appellant's] Mother: Okay. . . .  Well that makes it better?  No.

[Appellant]: No it doesn't make it better[,] but don't make it sound like I'm in jail because I'm on drugs.

N.T., 8/8/18, at 225.  In a March 17, 2017, recorded prison phone call, Appellant stated the following:

[Appellant]: [D]on't yell at me mom, Jesus this fucking shit is getting ridicul[ous], so what I fucked up, I sold drugs, I'm in fucking jail . . . for [three] months with nothing[.]

*Id.* at 227.

Before playing the above recordings, the trial court issued the following instruction to the jury:

 . . . You're [going] to be hearing evidence in the form of a statement made by [Appellant] while on the phone while he was incarcerated.  The statements do not specifically relate to the conduct for which he is on trial here, but they do involve the sale of drugs and given that he was incarcerated at the time they tend to support the notion that he may have been separately charged for offenses.  [T]his evidence is being offered for [the] limited purpose [that] it tends to show [Appellant] was an intentional participant in the alleged drug sale and was not present at the alleged drug sale by accident, by mistake or coincidence.  This evidence must not be considered by you in any way other than for that limited purpose.  You must not regard this evidence as showing [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt in this particular case.  [T]here is an issue as to whether [Appellant] was present at this drug sale, by coincidence or if he was there as part of a conspiracy.  [T]hat's what they are being offered for, to tend to show that it was not just a coincidence.  They are not being offered to show he has . . . bad character, or that he is a drug dealer, or that he has used drugs in the past.

N.T., 8/8/18, at 223-24.

We review a challenge to the admissibility of evidence by the following standard:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion.  An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.  Furthermore, if in reaching a conclusion the trial court over-rides [*sic*] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

**Commonwealth v. Thompson**, 106 A.3d 742, 754 (Pa. Super. 2014) (quotation marks & citations omitted).

Only relevant evidence is admissible at trial.  Pa.R.E. 402.  Evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action."  Pa.R.E. 401(a)-(b).  We note, though, that the Pennsylvania Rules of Evidence generally prohibit the admission of evidence of other crimes or bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Pa.R.E. 404(b)(1).  However, character evidence may be admitted for another purpose:

> This evidence may be admissible [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(2).

- 10 -

Returning to Appellant's argument, he avers the above recordings were "only admitted to blacken" his character and demonstrate that "based upon his prior drug dealing activities[,]" he was guilty of the present offense. Appellant's Brief at 10. He maintains that the Commonwealth needed to show a "logical connection or nexus" between the present matter and the subject of the phone calls to admit such evidence to prove intent or absence of mistake. *Id.* at 10-12. Appellant insists the evidence only consisted of general statements that he dealt drugs on other occasions and were inadmissible under the rules of evidence. *Id.* at 11. He contends that "no evidence presented at . . . trial . . . made absence of mistake relevant." *Id.* at 12-13. Lastly, he argues that any probative value the evidence offered was "vastly outweighed by its potential for prejudice," as the jury would assume that because "he was a drug dealer before[,] he must have been a drug dealer" during the incident at issue. *Id.* at 13.

The trial court concluded the evidence was admissible to show that Appellant was not merely present during the drug transaction by mistake. Trial Ct. Op. at 5. Specifically, it opined that the evidence was admissible because Appellant was asserting to the court that he was not involved in the drug transaction, even if only through Commonwealth witness Westefer. *Id.* at 5-6. Further, the court concluded the probative value of the evidence outweighed any potential for unfair prejudice, and the phone calls were not character evidence. *Id.* at 7-8. Instead, the trial court determined, and instructed the jury, that the calls went directly to whether Appellant was

- 11 -

present by accident or coincidence. **Id.** at 8-9. Lastly, the court relied on the fact that it required the Commonwealth to present evidence of the crime charged before it admitted the phone calls. **Id.** at 8. Upon our review, we conclude the trial court did not abuse its discretion when it admitted the prison phone calls.

The Commonwealth may offer other bad acts evidence under Rule 404(b)(2), which requires the Commonwealth to demonstrate that there was a "logical connection" between the proffered conduct and the crime at issue. **See Commonwealth v. Hicks**, 156 A.3d 1114, 1125 (Pa. 2017) (holding that evidence of other crimes is admissible where its probative value outweighs its potential for prejudice and "show a logical connection between them and the crime currently charged."). Here, one can arguably draw a line between this evidence and the present crime. The trial court concluded that the evidence was not presented to establish Appellant's propensity to participate in such similar crimes, but instead was offered to merely show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident[,]" as permitted by Rule 404(b). **See** Pa.R.E. 404(b), Trial Ct. Op. at 8. We agree.

In making this determination, the trial court relied on this Court's decision in **Commonwealth v. Kinard**, 95 A.3d 279 (Pa. Super. 2014) (*en banc*). **See** Trial Ct. Op. at 10-11 n.2. In **Kinard**, the defendant's co-conspirator, his cousin, sold drugs in three controlled purchases to a CI in her home. **Kinard**, 95 A.3d at 281. After the transactions, the police executed a

search warrant at the co-conspirator's home, where the defendant was the only person present at the time. *Id.* Upon searching the defendant's person, police found evidence indicative of his involvement in the sales. *Id.* at 282. At trial, the defendant's co-conspirator testified that the defendant provided her narcotics to sell and that they often spoke in code to elude the police, using such terms as "cat food," "cream of wheat," "to get it ready," and "chicken" when discussing drug transactions. *Id.*

The Commonwealth sought to admit evidence that while the defendant was incarcerated and awaiting trial on this matter, he made phone calls in which he used this same coded language to discuss the sale of narcotics. *Kinard*, 95 A.3d at 282. The trial court admitted the evidence to show absence of mistake and a common scheme. *Id.* at 285. At trial, the Commonwealth presented an expert witness to further discuss the coded language the defendant used in these phone calls. *Id.* at 282-83. This Court noted that though the defendant did not present a defense, it "was clear" that he was asserting "he was merely present" during the search of the co-conspirator's home and had no connection to the sale of drugs. *Id.* at 283. The jury convicted the defendant of PWID and conspiracy.

On appeal, the defendant argued the phone calls constituted inadmissible character evidence. *Kinard*, 95 A.3d at 284. This Court affirmed his judgment of sentence, concluding the phone calls: (1) demonstrated the defendant's "knowledge and awareness of drug trafficking[;]" (2) showed he was not in his co-conspirator's home innocently, but was conducting business;

(3) revealed a common plan, scheme, and design; (4) "demonstrated that [the defendant] was engaged in ongoing drug transactions even after he was arrested" that were "were similar, if not identical, to the drug transactions for which he was charged[;]" and (5) because the phone calls happened after his arrest, they established "the chain of events and course of criminal conduct[.]" *Id.* at 285.

We conclude the above case is similar enough to the present matter that we may conclude the trial court did not abuse its discretion. In *Kinard*, the Commonwealth admitted evidence that showed the defendant was engaging in "similar, if not identical" drug transactions while incarcerated even after his arrest. *See Kinard*, 95 A.3d at 285. The evidence demonstrated the defendant was using the same coded language during these phones calls that his co-conspirator confirmed he used while dealing drugs. It was evident that while the defendant was awaiting trial on those charges at issue, he was also continuing to orchestrate further transactions in the same way he did before his arrest.

Here, Appellant's phone calls with his mother demonstrate a similar connection. While incarcerated on unrelated drug charges, Appellant admitted that he previously sold "heroin." N.T., 8/8/18, at 225. The phone calls established Appellant's general "knowledge and awareness of drug trafficking[,]" and that he was not an innocent bystander who just happened to be at Westefer's home when these drug transactions took place — similar to the conversations of the defendant in *Kinard*. Further, the trial court

- 14 -

specified on more than one occasion that these statements were not to be offered to show Appellant's propensity to commit similar crimes, but again to merely show whether Appellant was present by accident or coincidence. ***See*** N.T. 7/17/18, at 10-11, 18-20; Order, 7/23/18; N.T. 8/18/18, at 223-24. The trial court then gave the jury a limiting instruction. "Juries are presumed to follow instructions given by the court." ***Commonwealth v. Hairston*** 249 A.3d 1046, 1068 (Pa. 2021) (citation omitted). For these reasons, we determine ***Kinard*** is similar to the present facts, and therefore applicable to our determination. We conclude no relief is due.

Nevertheless, in the event the phone calls did amount to inadmissible evidence, we would still conclude no relief is due because the trial court's admission constituted harmless error. Harmless error may be found where "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence." ***Commonwealth v. Brown***, 185 A.3d 316, 330 (Pa. 2018). While we acknowledge that to reach a harmless error analysis, normally the Commonwealth must raise the argument, this Court may affirm a valid judgment on any basis in the record. ***See Commonwealth v. Moore***, 937 A.2d 1062, 1073 (Pa. 2007) (holding that even though the Commonwealth did not raise the argument, the admission of hearsay testimony was harmless error because the appellate courts may affirm "a valid judgment based on any reason appearing as of record, regardless of whether it is raised by the

appellee") (citation omitted); *see also Commonwealth v. Hamlett*, 234 A.3d 486, 492 (Pa. 2020).

Here the Commonwealth presented the testimony of Probation Officer Murphy, who stated Appellant told her that he "sold drugs for income but not for use." N.T., 8/8/18, at 236. This evidence was admitted at trial and Appellant does not challenge it on appeal. Officer Murphy's testimony demonstrated that Appellant had a general history of drug dealing, similar to Appellant's statements in the recorded phone calls. Because the contents of the phone calls were merely cumulative of Officer Murphy's testimony, we would conclude the court's improper admission of the prison phone calls amounted to harmless error. *See Brown*, 185 A.3d at 330. We note that Officer Murphy's testimony was offered under the same argument and circumstances as the recorded phone calls. Further, Appellant's statements to Officer Murphy also occurred after he was incarcerated for unrelated drug offenses happening before he was charged for the present offense. Akin to the recorded phone calls, this evidence is similarly problematic. However, Appellant did not raise a challenge to this testimony on appeal, and therefore, the jury heard testimony relaying that Appellant previously was involved in drug sales.

In his second claim on appeal, Appellant challenges the sufficiency of the evidence. Appellant's Brief at 13. Our standard when reviewing a challenge to the sufficiency is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted).

Here, Appellant avers the Commonwealth failed to prove that he and Westefer had a shared criminal intent or made an agreement to deliver drugs to Smith during the November 10, 2016, transaction. Appellant's Brief at 14-15. Appellant maintains that Smith did not testify that he saw Appellant provide drugs to Westefer. ***Id.*** Instead, he insists the evidence demonstrated: (1) Smith stated only that Westefer told him Appellant would provide the drugs; (2) Appellant did not handle the drugs during the transaction; and (3) at trial, Westefer testified "she did not receive the drugs . . . from Appellant." ***Id.*** at 15.

Criminal conspiracy is defined, in relevant part, as follows:

(a) **Definition of conspiracy** — A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime . . . .

18 Pa.C.S. § 903(a)(1). This Court has summarized the following factors to be analyzed in determining the sufficiency of the evidence supporting the existence of a conspiracy:

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (citation omitted). Additionally,

> [m]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, **the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators**. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

- 18 -

*Commonwealth v. Dunkins*, 229 A.3d 622, 633 (Pa. Super. 2020) (citation omitted & emphasis added).

In finding there was sufficient evidence that Appellant conspired with Westefer to sell methamphetamine, the trial court, relied on the Commonwealth's argument, and determined the Commonwealth sustained its burden through the testimony of both Smith and Westefer. Trial Ct. Op. at 4. We agree.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we find it was reasonable for the jury to conclude that the "relations, conduct[,] circumstances[,] or overt acts" between Appellant and Westefer demonstrated that Appellant conspired with Westefer to sell drugs to Smith. *See Dunkins*, 229 A.3d at 633; *Lambert*, 795 A.2d at 1016; *see also Antidormi*, 84 A.3d at 756. The Commonwealth presented the testimony of Smith, which established that Westefer told him she would retrieve drugs from Appellant and directed Smith to return to her home later that evening to complete a drug transaction. *See* N.T., 8/8/18, at 118-20. Further, Smith's testimony established that Westefer told him to "hurry up" and arrive before Appellant left so that Smith could retrieve the narcotics, and that Westefer handed Appellant the money after the completed transaction. *See id.* at 121, 124, 127. The Commonwealth also presented evidence that at Westefer's guilty plea hearing for the same offense, she agreed that she and Appellant entered an agreement to deliver drugs on November 10th and that she "was dealing [drugs] with" Appellant. N.T., 8/8/19, at 168-69.

Though Westefer later recanted these admissions, the jury was free to credit the admissions she made at her guilty plea hearing over those she made at trial. *See Antodormi*, 84 A.3d at 756. No relief is due.

We agree the trial court did not abuse its discretion when it admitted the recorded phone calls, and moreover, this evidence was cumulative. Further, Appellant cannot establish the evidence was insufficient to support his conviction, and as such, he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/04/2023