J-A26037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| QUENTIN MAURICE PRIMUS | : | |
| | : | |
| Appellant | : | No. 497 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 18, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007618-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| QUENTIN MAURICE PRIMUS | : | |
| | : | |
| Appellant | : | No. 498 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 18, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001724-2023

BEFORE:  OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED:  December 8, 2025**

Appellant, Quentin Maurice Primus, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his jury trial convictions for two counts each of aggravated assault, criminal attempt, recklessly endangering another person ("REAP"), and one count each of first degree murder and carrying a firearm without a license, and bench trial

J-A26037-25

conviction for a related count of persons not to possess firearms.[1]

The trial court set forth the relevant facts and procedural history of this matter as follows:

> The credible evidence presented at trial established that in the early morning hours of July 1, 2022, Darrian Davis, Jalen Yates and D'Andre Wells were sitting in a Pontiac G6 automobile in the Hazelwood section of the City of Pittsburgh on Johnston Avenue near the intersection with Gertrude Avenue. A gray Ford Fusion circled that area three times at approximately 12:29 a.m., 12:40 a.m. and 12:41 a.m. On the third pass, the Ford Fusion slowly approached the Pontiac and almost came to a stop. The front seat passenger leaned out of the window of the Ford Fusion and riddled the Pontiac with 16 gunshots using two different firearms. The back window and windshield of the Pontiac was shattered from the bullets. The hood and driver's side of the vehicle were struck with bullets. The Ford Fusion then sped from the scene.
>
> Darrian Davis died as a result of a gunshot wound to his neck and chest. Jalen Yates sustained gunshot wounds to his neck and upper chest and D'Andre Wells suffered a gunshot wound to his hand. Both Yates and Wells survived their gunshot wounds.
>
> Detectives were able to locate the Ford Fusion due to some of its distinct features. The vehicle has a missing passenger side mirror and a thin antenna. The vehicle was observed on License Plate Readers throughout the City of Pittsburgh and it was determined that the license plate number of the Ford Fusion was LPD5962. The Ford Fusion was located shortly after the homicide and a traffic stop was conducted. [Appellant] was driving the vehicle at the time. Mail addressed to [Appellant], his learner's permit and an earning statement from his employer dated just days before the homicide were recovered from inside the Ford Fusion. [Appellant] was in possession of two cells phones as well.

_____

[1] 18 Pa.C.S.A. §§ 2702, 901, 2705, 2502(a), 6106, and 6105, respectively.

- 2 -

After the vehicle stop, [Appellant] was transported to police headquarters. He was interviewed and told law enforcement officers that he was the only person who had access to the Ford Fusion during the relevant time period.

Subsequent GPS tracking information obtained from the infotainment system of the Ford Fusion disclosed that the Ford Fusion left from the Hazelwood area and traveled to various other areas near the City of Pittsburgh near the time of the homicide.

A 9mm bullet was recovered from Darrian Davis. Two other bullets were recovered from the interior of the Pontiac. Ballistic testing revealed that all three of these bullets were fired from the same firearm. Six cartridge cases from a 9mm firearm and eight cartridges from a .45 caliber firearm were found at the scene. Two more 9mm cartridges were recovered from the area between the rear window and trunk of the Ford Fusion after the vehicle was seized by police. Ballistic testing disclosed that the eight 9mm cartridges were fired from the same firearm. The shootings were also recorded on surveillance video. Identification of the shooter was not possible by watching the video footage.

Fingerprint analysis disclosed that [Appellant's] fingerprints from his left middle finger and ring finger were recovered from the front passenger side window. Those prints were in a downward position, indicative that [Appellant] was in the front passenger seat reaching across his body toward the window. His palm print was recovered from the driver's side rear passenger door and his fingerprints were recovered from other area of the vehicle.

Detectives also recovered digital evidence from the infotainment center of the Ford Fusion. [Appellant's] cell phone was connected to the infotainment center just prior to and after the homicide. Other evidence established that [Appellant's] cell phones were located in the Ford Fusion and were used just prior to and after the homicide. Near the time of the homicide, [Appellant] sent a text message informing someone that he was coming from Hazelwood.

Evidence also established that the 9mm firearm was used in a shooting in Munhall, Pennsylvania approximately four days

prior to the homicide in this case. The Ford Fusion was present in Munhall at the scene of the shooting and it sustained damage from a bullet hole. [Appellant] himself was sent a video of the Munhall incident on his cell phone. In a text message to the person who sent the video, [Appellant] described the video as "me trying to shoot my gun jam problem."

(Trial Court Opinion, 12/16/24, at 2-5).

The matter proceeded to trial and on January 23, 2024, a jury convicted Appellant of the aforementioned charges. The court convicted Appellant of the remaining charge of persons not to possess firearms at a separate docket. On March 18, 2024, the court sentenced Appellant to life imprisonment without parole for the murder conviction, with a consecutive, aggregate term of 43 to 86 years of incarceration. On March 21, 2024, Appellant timely filed a post-sentence motion, which the court denied on March 25, 2024.

On April 24, 2024, Appellant timely filed separate notices of appeal at each docket number, which this Court later consolidated *sua sponte*. On June 26, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On July 17, 2024, Appellant timely complied.

On appeal, Appellant raises the following issues for review:

Whether the evidence was insufficient to sustain any of [Appellant's] convictions, where the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] participated in the shooting incident from which the convictions arose?

Whether the trial court abused its discretion and denied [Appellant] a fair trial where it admitted evidence and testimony regarding an unrelated shots-fired incident for which [Appellant] was never arrested or charged?

- 4 -

(Appellant's Brief at 7).

In Appellant's first issue, he argues that the Commonwealth failed to prove, beyond a reasonable doubt, that Appellant participated in the shooting incident from which the convictions arose. According to Appellant, the Commonwealth relied entirely upon circumstantial evidence consisting of data extracted from the Ford Fusion's infotainment system, and from iPhones confiscated from Appellant as evidence of his presence and participation in the shooting. Appellant claims that the Commonwealth's theory of the case relied upon the proposition that Appellant was the sole possessor and user of the iPhones at all relevant times and, therefore, was in the Ford Fusion at the time of the shooting. Appellant asserts, however, that the iPhones showed that they and Appellant were a block and a half from the Ford Fusion when the 12:41 a.m. shooting occurred. Appellant concludes that the evidence was insufficient to sustain his convictions on these grounds, and this Court must grant relief. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be

resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa.Super. 2018) (quoting *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa.Super. 2010)). "[A] perpetrator's identity may be established with circumstantial evidence." *Commonwealth v. Dunkins*, 229 A.3d 622, 632 (Pa.Super. 2020), *cert. denied*, ___ U.S. ___, 142 S.Ct. 1679, 212 L.Ed.2d 584 (2022). "This Court has recognized that 'evidence of identification need not be positive and certain to sustain a conviction.'" *Id*. (quoting *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa.Super. 2016)).

Instantly, the trial court observed:

> In this case, the Commonwealth intended to prove identification through circumstantial evidence. While no witness actually identified the shooter in this case, this [c]ourt believes that the circumstantial evidence was sufficient to identify him as the shooter. The evidence in this case established that the Ford Fusion was controlled by [Appellant] at the time of the shooting. His own statements to detectives demonstrated that he was the only person who controlled the Ford Fusion during the relevant time period. GPS data confirmed that the Ford Fusion circled the area of the homicide two times prior to the homicide and on the third time, gunshots were fired from the Ford Fusion. His mail, his learner's permit and earnings statement were recovered from the vehicle. His cell phone was linked to the infotainment system of the Ford Fusion during the relevant time period. His fingerprints were recovered from various areas of the Ford Fusion including the front passenger window. Evidence also established that he possessed the 9mm firearm that fired the gunshots in this case days earlier during the Munhall incident. [Appellant's] text messages also demonstrated that he was in the Hazelwood area during the relevant time period. This [c]ourt believes that the jury permissibly believed that the identification of [Appellant] as the shooter was proved beyond a reasonable doubt in this case. The jury was also free to believe that [Appellant] was the driver of the Ford Fusion and was, therefore, an accomplice to the shooting.[2] The evidence was sufficient to prove identification.

(Trial Court Opinion, 12/16/24, at 7-8).

The record supports the trial court's conclusions. Both camera and GPS evidence placed the Ford Fusion at or close to the scene of the homicide at the time of the shooting. (N.T. Trial, 1/16/24, at 153; 1/17/24 Trial, at 337-342.). Surveillance footage from the area and from the Ford Fusion's GPS

---

[2] The trial court instructed the jury on accomplice liability. (**See** N.T. Trial, 1/23/25, at 725-29).

- 7 -

system illustrated that on the night of the homicide, the car drove into the area, circled the block three times, and on the final pass, shots were fired. (**See** N.T. Trial, 1/16/24, at 151-56, 163-68, 170; N.T. Trial, 1/17/24, at 434-47). At least some of those shots were fired from a 9mm firearm which had been connected with Appellant in an unrelated shooting that occurred three days before the homicide. (**See** N.T. Trial, 1/17/24, at 329-30; N.T. Trial, 1/17/24, at 508-520).

Appellant admitted that he was the only person with access to the vehicle at the time of the shooting. (**See** N.T. Trial, 1/16/24, at 185, Commonwealth's Ex. 29, at 5:20–5:23). Appellant's fingerprints were discovered throughout the vehicle, including on the front passenger window, and identification belonging to Appellant was found inside the vehicle. (**See** N.T. Trial, 1/17/24, at 233-34, 241-44, 270-74).

Both the red and gray iPhones held by Appellant[3] and connected to him through text messages, selfies, and linked accounts, were used the night of the shooting. (N.T. Trial, 1/17/24, 381-88; N.T. Trial, 1/18/24, at 396-401, 404-06, 408-15, 417-25, 434-35). Indeed, Appellant answered calls from his mother and girlfriend, and in text messages told friends he would be coming from Hazelwood, and he also asked another person to pick him up and that they would need to use this friend's car. (**See id.** at 417-26). Further, on the night of the shooting, the gray iPhone connected on and off to the infotainment

---

[3] Appellant stipulated that the phones were recovered from him. (**See** N.T. Trial, 1/17/24, at 403).

system of the Ford Fusion between 10:15:57 p.m. and 12:10:01 a.m. (***See id.*** at 430-31). The red iPhone did not connect to the infotainment system at those times, but GPS established it was in the same location as the Ford Fusion at those times. (***Id.*** at 453-59). Further, although Appellant argues that neither phone was connected to the infotainment system during the exact times of the shooting, the Commonwealth presented testimony that the phones could have been disconnected for any number of reasons. (***See*** N.T. Trial, 1/17/24, at 352-57).

Viewed in the light most favorable to the Commonwealth as the verdict winner, the circumstantial evidence was sufficient to allow the jury to decide beyond a reasonable doubt that Appellant was the perpetrator of the crimes. ***See Dunkins, supra***. ***See also Sebolka, supra***; ***Smyser, supra***. Therefore, Appellant's first issue merits no relief.

In Appellant's second issue, he contends that the court abused its discretion when it admitted evidence and testimony regarding an unrelated shots-fired incident for which Appellant was never arrested or charged. Appellant argues that although the trial court allowed the evidence as rebuttal evidence, it went far beyond rebuttal, confused the jury, and misled the jury into speculating as to whether Appellant was culpable for the prior act. Appellant concludes that the court erred in admitting this evidence, and he is entitled to relief. We disagree.

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). "[A] discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." *Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004) (internal citation and quotation marks omitted).

Pennsylvania Rule of Evidence 404(b) provides as follows:

> **Rule 404. Character Evidence; Crimes or Other Acts**
>
> \* \* \*
>
> **(b) Other Crimes, Wrongs or Acts.**
>
> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

This Court has observed that "[t]he scope of redirect examination is largely within the discretion of the trial court. When a party raises an issue on cross-examination, it is no abuse of discretion for the court to permit redirect on that issue to dispel any unfair inferences." *Commonwealth v. Gonzalez*, 109 A.3d 711, 730 (Pa.Super. 2015) (citations omitted). Further, "the admission of rebuttal testimony is within the sound discretion of the trial court, and the appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut." *Commonwealth v. Gilbert*, 269 A.3d 601, 610 (Pa.Super. 2022) (quoting *Commonwealth v. Yocolano*, 169 A.3d 47, 56 (Pa.Super. 2017)).

Instantly, the trial court explained:

> At trial, as set forth above, the Commonwealth presented ballistic evidence regarding the 9mm firearm used in the shootings in this case. During cross-examination of the ballistic expert, defense counsel asked:
>
> > Q: So you would agree to a degree of scientific certainty in your field that both of the firearms in this case were – appeared in later cases?
> >
> > A: The firearm was recovered for the .45s, but according to this, it doesn't appear that the 9mm caliber firearm was recovered. But that firearm was used in multiple incidents.
> >
> > Q: So, to clarify, both the 9mm and the .45 were used in other incidents?
> >
> > A: Yes, correct.
>
> In response, the Commonwealth, over defense objection, was permitted to present evidence that one of the prior incidents was the Munhall shooting. The Commonwealth

- 11 -

presented evidence that the Ford Fusion at issue in this case was parked on Martha Street in Munhall just days before the shooting in this case. Gunshots were fired an[d] a 9mm cartridge was recovered from the scene. The Ford Fusion sustained firearm damage and a bullet hole during the incident. Police officers conducted a traffic stop a few hours after the Munhall incident and the defendant was driving the Ford Fusion. Ballistic testing revealed that the 9mm casing that was recovered from the Munhall incident was fired from the same firearm that fired the 9mm casings recovered in this case. The defense claims that [the trial court[4]] improperly permitted the Commonwealth to introduce this evidence at trial.

The record reflects that [the trial court] believed that the evidence regarding the Munhall shooting was relevant because it connected [Appellant] to the 9mm firearm. [The court] also believed defense counsel opened the door to this testimony when he brought up the fact that the 9mm firearm was used in prior shootings. Additionally, [the court] believed that the Commonwealth's evidence was proper follow-up questioning to probe the testimony elicited on cross-examination. In an attempt to convince the jury that someone other than [Appellant] possessed the 9mm firearm at the time of the shooting in this case, the defense presented evidence that the 9mm firearm was used in a shooting after [Appellant] was arrested in this case and was in pretrial custody. [The trial court] also believed that the Commonwealth was permitted to introduce evidence that the firearm was also used in shootings prior to the time [Appellant] was incarcerated. For those reasons, [the trial court] believed that the Munhall shooting was relevant and admitted it at trial.

(Trial Court Opinion, 12/16/24, at 16-17).

We agree with the trial court this testimony was not admitted under Pa.R.E. 404(b) as a prior bad act but was appropriate rebuttal evidence after Appellant opened the door regarding the usage of the 9mm firearm. *See*

---

[4] Following the trial court's retirement, the case was reassigned to the current jurist.

***Gilbert, supra***; ***Gonzalez, supra***.   Further, the court offered cautionary, limiting instructions regarding the Commonwealth's rebuttal evidence, namely, that the jury could not use the evidence to infer that Appellant did anything criminal in the Munhall incident.   (***See*** N.T. Trial, 1/18/24, at 525-26).   The jury is presumed to have followed the court's instructions.   ***See Commonwealth v. Vucich***, 194 A.3d 1103 (Pa.Super. 2018), *appeal denied*, 650 Pa. 297, 199 A.3d 885 (2018).   On this record, we cannot say that the court abused its discretion in admitting this evidence.   ***See Montalvo, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  12/08/2025

- 13 -