**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| LADELL EMERY HANNON | : | |
| Appellant | : | No. 151 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 22, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000236-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| LADELL EMERY HANNON | : | |
| Appellant | : | No. 152 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 22, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000487-2022

BEFORE: OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.: **FILED: FEBRUARY 19, 2026**

Appellant, Ladell Emery Hannon, appeals from the judgment of sentence entered in the Schuylkill County Court of Common Pleas, following his jury trial convictions at two dockets for criminal attempt – homicide, aggravated assault, weapons of mass destruction causing injury, weapons of mass destruction causing evacuation, arson endangering persons, causing a catastrophe, three counts of criminal mischief, two counts of stalking,

recklessly endangering another person, and theft by unlawful taking.[1] We affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this case are as follows. Appellant was employed as a police officer in Hazelton, Luzerne County, and his wife, Danielle Hannon, was employed as an emergency medical technician. In 2019, Appellant strayed from the marriage, and Ms. Hannon considered divorce but ultimately stayed in the marriage.

Harrison Jordan lived in Kelayres, in Schuylkill County. From September 2020 through November 2020, Mr. Jordan and Ms. Hannon were employed by the Lehigh Valley Health Network Emergency Medical Services and were work partners. In July 2021, Ms. Hannon and Mr. Jordan's relationship became intimate. Both Ms. Hannon and Mr. Jordan later enrolled in classes to become paramedics.

In August 2021, Ms. Hannon filed for divorce and separated from Appellant, with the two sharing custody of their young children. After Appellant became aware of the relationship between Ms. Hannon and Mr. Jordan, he confronted Mr. Jordan over the phone in mid-September 2021.

On October 5, 2021, Ms. Hannon and Mr. Jordan met at a local Sheetz after their paramedic classes and noticed Appellant's car was there as well. The car was captured on surveillance footage. After the incident, Ms. Hannon told Mr. Jordan not to go back to his apartment; he spent the night at a motel.

---

[1] 18 Pa.C.S.A. §§ 901, 2702, 2716(b)(1), 2716(b)(3), 3301(a)(1)(i), 3302, 2709.1, 2705, and 3921, respectively.

On October 6, 2021, Mr. Jordan returned to his home and noticed that an intruder had been inside and had left items in disarray, unplugged his electronics, and had stolen a piece of paper that had Ms. Hannon's phone number and name on it. Mr. Jordan installed a security camera.

On October 14, 2021, at approximately 2:00 or 3:00 a.m., while Ms. Hannon slept at Mr. Jordan's home, Appellant arrived and began banging on the front door, yelling and attempting to call Ms. Hannon on her cell phone. In the morning, Mr. Jordan smelled what appeared to be urine on his car. On October 19, 2021, Mr. Jordan and Ms. Hannon again noticed Appellant's car at the Sheetz after their classes. Mr. Jordan again spent the night in a motel.

On October 28, 2021, Mr. Jordan received a notification from the camera that it had detected a person in the apartment. Mr. Jordan contacted the police and upon entering the apartment, discovered the security camera was missing. Nevertheless, Mr. Jordan was able to recover digitally recorded video and both he and Ms. Hannon recognized the intruder as Appellant. Appellant was not masked and wore his uniform pants with a distinctive reflective stripe. That night, Mr. Jordan and Ms. Hannon stayed at a motel in Wilkes Barre.

In December, Mr. Jordan frequently noticed a white car appearing similar to Appellant's white Honda either traveling by or parked near his apartment. Mr. Jordan believed that Appellant was watching him. Similarly, Ms. Hannon noticed that Appellant often appeared at the hospital during her shifts, or in other places that she happened to be. On December 11, 2021, Appellant again confronted Mr. Jordan outside of his apartment, raised a fist

like he was going to throw a punch, and stated, "Your time is coming. I'm going to get you." (N.T. Trial, 9/9/24, at 130). Ms. Hannon intervened and demanded that Appellant leave, which he did. The incident was captured on security footage.

Early in the morning on December 21, 2021, Mr. Jordan left his apartment. However, he noticed a smoking five-gallon bucket outside of his residence. Mr. Jordan attempted to run but did not get far before the bucket exploded. The explosion caused extensive damage to the apartment building, a vacant church opposite the building, and vehicles parked along the street. The explosion also shattered the window of Michael Stein's apartment, cut his finger and damaged his car, and damaged the apartment building itself, which was owned by D. Agostino. Mr. Jordan suffered ruptured eardrums, wounds caused by shrapnel and cement, and burns. He was taken by ambulance to a local hospital but eventually airlifted to a larger facility in Allentown.

During the subsequent investigation, police officers discovered a tracker installed under Ms. Hannon's vehicle. Officers determined that Appellant had purchased six total trackers, including one placed on Mr. Jordan's car, and had obtained subscriptions for electronic receipt of the tracking information. Officers also tracked the locations of Appellant's two cell phones leading up to the explosion, and determined that either one or both of Appellant's phones were near or at Mr. Jordan's home frequently at various times of the day and evening in October and November, including the day Mr. Jordan's camera was stolen.

Further, police officers tracked Appellant's purchases and discovered that he had made purchases at fireworks stores that coincided with the costs of hobby fuses, a book called *The Art of Lockpicking*, and reports on Mr. Jordan from various data aggregator sites such as Spokeo and Peoplefinders. Appellant also made suspicious searches from September through December, which included inquiries about Spokeo, Mr. Jordan, lockpicking sets, fireworks, "how many pounds of [Tannerite] is deadly" and "10 lbs of tannerite vs. car," homemade detonators, and how many foot-pounds of energy were required to kill a human being or penetrate a human skull.

Finally, the police recovered surveillance video recordings from December 18, 19, and 20, 2021. First, the December 18, 2021 video showed that a white Honda Accord arrived on the scene between the hours of 4:30 a.m. and 5:30 a.m. Further surveillance video recordings

> depicted a man carrying what appeared to be a five-gallon bucket in the early weekend mornings of December 18 and 19, 2021, shortly before the times that [Mr.] Jordan would normally leave his apartment for work. ([Mr.] Jordan originally had been scheduled to work that weekend but he had taken the days off from work.) The man was shown carrying the bucket in the direction of [Mr.] Jordan's apartment and/or returning with the bucket to a white motor vehicle. On December 19, 2019, a video depicted a person carrying a bucket in the direction of [Mr.] Jordan's apartment at 4:59 a.m., and then three minutes later walking in the opposite direction and away from the apartment carrying nothing. The white vehicle operated by the person was described as closely resembling that of [Appellant's] Honda, including by its contours, tires, windows, and missing license plate holder.

(Trial Court Opinion, 3/26/25, at 8). The video from the date of the incident

showed a person walking towards Mr. Jordan's apartment at 5:06 a.m., before changing direction and walking away a moment later.

Additionally, a neighbor who lived across the street from the nearby church saw a white vehicle she had never seen before speeding away from the church parking lot after the explosion. Further, automated street license plate readers in Hazleton recorded Appellant's vehicle on December 21, 2021, at 4:54 a.m., traveling in the direction of Appellant's home. Although Appellant at first denied leaving his apartment the morning of the explosion, when confronted with the above information, he later admitted to leaving the apartment but claimed he had gone to obtain cigarettes.

On September 9, 2024, the matter proceeded to jury trial.[2] At Docket No. 487-2022, the jury convicted Appellant of criminal attempt to commit homicide, aggravated assault, weapons of mass destruction causing injury, weapons of mass destruction causing evacuation, arson endangering persons, causing a catastrophe, three counts of criminal mischief, two counts of stalking, and recklessly endangering another person. At Docket No. 236-2022, the jury acquitted Appellant of a burglary charge, but convicted him of theft by unlawful taking. On November 22, 2024, the court sentenced Appellant to an aggregate term of 17½ to 35 years of incarceration followed by one year of probation.

On November 26, 2024, Appellant timely filed a post-sentence motion

---

[2] Appellant initially proceeded to a jury trial on March 4, 2024, but that trial ended in mistrial.

requesting an arrest of judgment and motion for acquittal. In his motion, Appellant argued that the jury had improperly credited the testimony of Ms. Hannon and Mr. Jordan, arguing that they were biased witnesses; that the jury failed to provide adequate consideration for the fact that Appellant's phone was not near the scene on the date of the incident; that the jury overly credited Google searches made well in advance of the incident itself; and that the Commonwealth failed to present any eyewitnesses or direct evidence to support the jury's verdicts. Additionally, Appellant argued that there was insufficient evidence to prove his identity as the perpetrator of the incident, and specifically challenged the evidence to support his convictions for stalking and theft. On January 14, 2024, the court denied Appellant's post-sentence motion.

On February 4, 2025, Appellant timely filed notices of appeal at each docket.[3] That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Following the grant of Appellant's motion for extension of time, Appellant timely filed his statement on March 3, 2025.

Preliminarily, appellate counsel seeks to withdraw representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349

---

[3] Appellant originally filed two separate notices of appeal listing both trial court docket numbers but, following this Court's August 18, 2025 order, Appellant filed amended notices of appeal listing only one docket number for each notice of appeal.

(2009). ***Anders*** and ***Santiago*** require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. ***See Santiago, supra*** at 173-79, 978 A.2d at 358-61. "Substantial compliance with these requirements is sufficient." ***Commonwealth v. Reid***, 117 A.3d 777, 781 (Pa.Super. 2015). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. ***Commonwealth v. Palm***, 903 A.2d 1244, 1246 (Pa.Super. 2006). ***See also Commonwealth v. Dempster***, 187 A.3d 266 (Pa.Super. 2018) (*en banc*).

In ***Santiago, supra*** our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither ***Anders*** nor [***Commonwealth v. McClendon***, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under ***Anders*** are references to anything in the record that might arguably support the appeal.

\* \* \*

> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-179, 978 A.2d at 361.

Instantly, appellate counsel has filed an application to withdraw. The application states that counsel has reviewed the record and determined that there are no non-frivolous grounds for an appeal. Counsel subsequently sent a copy of the **Anders** brief to Appellant. Counsel also provided Appellant with a letter explaining Appellant's right to retain new counsel or proceed *pro se* to raise any additional points Appellant deems worthy of this Court's attention. In the **Anders** brief, counsel summarized the facts and procedural history of Appellant's case. Some argument sections of the brief cite to the portions of the record that arguably support Appellant's issues on appeal, but others do not cite to the record.[4] Counsel also provides the reasons for his conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially

---

[4] This Court cautions counsel to take greater care when filing future **Anders** briefs.

complied with the technical requirements of **Anders** and **Santiago**. **See Reid, supra**.

Appellant has not responded to the **Anders** brief *pro se* or with newly retained private counsel. Counsel raises the following issues on Appellant's behalf:

> 1. Did the court err in denying [Appellant's] motion to dismiss the charge of burglary?[5]
>
> 2. Are the verdicts entered by the jury against the weight of the evidence?
>
> 3. Did the Commonwealth fail to establish sufficient evidence to prove the charges beyond a reasonable doubt that [Appellant] was [the] actor in the December 21, 2021, incident?
>
> 4. Did the Commonwealth fail to present sufficient evidence to sustain the charge of stalking beyond a reasonable doubt?
>
> 5. Did the Commonwealth fail to present sufficient evidence to prove the charge of theft from October 28, 2021, beyond a reasonable doubt?
>
> 6. Did the Commonwealth fail to present sufficient evidence to support the charge of criminal attempt to commit homicide beyond a reasonable doubt?
>
> 7. Did the Commonwealth fail to present sufficient evidence

---

[5] With respect to this issue, we reiterate that Appellant was acquitted of the charge of burglary. "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." **Commonwealth v. Bricker**, 41 A.3d 872, 881 (Pa.Super. 2012) (citations omitted) (holding appellant's claim that trial court erred by permitting amendment of information was moot where trial court later dismissed amended counts for lack of evidence). Here, because Appellant was acquitted of the burglary charge, the issue is moot and we decline to address it further.

to support the charge of aggravated assault beyond a reasonable doubt?

8. Did the Commonwealth fail to present sufficient evidence to support the charge of weapons of mass destruction (causing injury) beyond a reasonable doubt?

9. Did the Commonwealth fail to present sufficient evidence to support the charge of weapons of mass destruction (causes evacuation) beyond a reasonable doubt?

10. Did the Commonwealth fail to present sufficient evidence to support the charge of arson (endangering property) beyond a reasonable doubt?

11. Did the Commonwealth fail to present sufficient evidence to support the charge of causing a catastrophe beyond a reasonable doubt?

12. Did the Commonwealth fail to present sufficient evidence to support the charge of criminal mischief (three counts) beyond a reasonable doubt?

13. Did the Commonwealth fail to present sufficient evidence to support the charge of stalking (victim H. Jordan) beyond a reasonable doubt?

14. Did the Commonwealth fail to present sufficient evidence to support the charge of stalking (D. Hannon) beyond a reasonable doubt?

15. Did the Commonwealth fail to present sufficient evidence to support the charge of recklessly endangering another person beyond a reasonable doubt?

(**Anders** Brief at 5-7).[6]

---

[6] It is well settled that only issues properly raised in a timely Rule 1925(b) statement are preserved for appellate review. **See** Pa.R.A.P. 1925(b)(4)(vii). In criminal cases, where the appellant is represented by counsel, however, the failure to file a timely concise statement may be deemed to be *per se* ineffectiveness and the issues are not automatically waived. **See** Pa.R.A.P.
*(Footnote Continued Next Page)*

Appellant first argues that the verdicts entered by the jury were against

the weight of the evidence and shock one's conscience or sense of justice.

According to Appellant, the jury was "well aware" of the interest and biases of

_____

1925(c)(3); ***Commonwealth v. Burton***, 973 A.2d 428, 432-33 (Pa.Super. 2009) (*en banc*) (explaining that counsel's failure to file timely concise statement is functional equivalent of filing no statement at all, as both failures waive all issues on appeal; thus, counsel's failure to file timely concise statement in criminal case constitutes *per se* ineffectiveness, for which remand under Rule 1925(c)(3) is permitted). Likewise, "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." ***Commonwealth v. Reeves***, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007). Nevertheless, where the trial court addresses the issues raised in the deficient Rule 1925(b) statement, we need not remand but may address the issues on their merits. ***See, e.g., Commonwealth v. Brown***, 145 A.3d 184, 186 (Pa.Super. 2016), *appeal denied*, 641 Pa. 56, 165 A.3d 892 (2017). ***See also Burton, supra*** at 433 (stating: "[I]f there is an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal").

Here, Appellant failed to raise his weight and sufficiency of the evidence claims with any specificity in his Rule 1925(b) statement. Appellant's statement merely asserts, with regard to each conviction, that the evidence was insufficient to support the charge beyond a reasonable doubt, and was against the weight of the evidence. (***See*** Appellant's Rule 1925(b) Statement, 3/3/25, at 1-2 (unpaginated)). Given that Appellant's first issue on appeal is moot, Appellant's vague Rule 1925(b) statement could arguably render all of Appellant's remaining issues waived on appeal and constitute *per se* ineffectiveness. ***See Burton, supra***; ***Reeves, supra***. ***See also Commonwealth v. Green***, No. 2280 EDA 2018 (Pa.Super. filed Mar. 6, 2020) (unpublished memorandum) (holding appellant's Rule 1925(b) statement was so vague that it precluded merits review of all appellate issues and constituted *per se* ineffective assistance of counsel); Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value). Nevertheless, as the trial court had the opportunity to prepare an opinion addressing the issues raised, we decline to find waiver on these grounds or remand for a supplemental Rule 1925(b) statement. ***See Burton, supra***.

the witnesses, based upon their relationship to each other as well as to Appellant. (**See Anders** Brief at 25). We disagree.

Our standard of review regarding challenges to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the .... verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> **Commonwealth v. Small**, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted). Moreover, "[a] verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder." **Commonwealth v. Morales**, 625 Pa. 146, 164, 91 A.3d 80, 91 (2014) (citing **Commonwealth v. Tharp**, 574 Pa. 202, 218, 830 A.2d 519, 528 (2003)).

Instantly, Appellant filed a post-sentence motion challenging the weight of the evidence, and the trial court denied the motion. In its opinion, the trial

court explained:

> The facts that [Mr.] Jordan and [Ms. Hannon] were in a relationship at the times of the criminal incidents and at trial, that [Appellant's] phones were no longer recording their locations - the location services having been turned off or the phones powered off prior to the day of the explosion - that [Appellant] searched the internet about explosive materials and inquired about the lethality of Tannerite a few weeks in advance of the blast, and that no eyewitness observed [Appellant] ignite the explosive material[,] do not render the verdicts of the jury against the weight of the evidence. Notably, the relationship between [Mr.] Jordan and [Ms. Hannon] provided a motive for [Appellant's] actions; neither claimed that he had set off the blast; [Appellant's] purchases and his inquires on the internet between late September and December 9, 2021 were relevant to establish the identity of the perpetrator; and, the evidence thereof set forth the extensive time and planning involved in carrying out the crimes. [Appellant] has not identified the testimony of any witness who provided substantial contradictory evidence on any significant issue to that presented via the Commonwealth witnesses. Moreover, the lack of eyewitness testimony did not render the verdicts of the jury against the weight of the evidence.

(Trial Court Opinion, 3/26/25, at 17). The record supports the trial court's conclusions. On this record, we cannot say the court abused its discretion in ruling on Appellant's weight claim. **See Champney, supra**.

Appellant's remaining issues challenge the sufficiency of the evidence to support each conviction, as well as the sufficiency of the evidence to prove his identity as the perpetrator.[7] Specifically, Appellant contends that the

---

[7] Notably, Appellant does not specify any particular element of any of the crimes for which he was convicted as lacking sufficient evidence. Thus, we construe Appellant's multiple issues attacking the sufficiency of the evidence

*(Footnote Continued Next Page)*

Commonwealth relied upon entirely circumstantial evidence to prove its case, and that such evidence was insufficient to identify him as the perpetrator of the crimes. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

as claiming the Commonwealth failed to prove Appellant was the perpetrator of the offenses. To the extent Appellant purports to attack any of the particular elements of the offenses for which he was convicted, those claims are waived for lack of development. *See* Pa.R.A.P. 2119(a) (setting forth requirements of argument section on appeal).

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

"[A] perpetrator's identity may be established with circumstantial evidence." *Commonwealth v. Dunkins*, 229 A.3d 622, 632 (Pa.Super. 2020), *cert. denied*, ___ U.S. ___, 142 S.Ct. 1679, 212 L.Ed.2d 584 (2022). "This Court has recognized that 'evidence of identification need not be positive and certain to sustain a conviction.'" *Id.* (quoting *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa.Super. 2016)).

Instantly, the trial court summarized the circumstantial evidence establishing Appellant's identity as the perpetrator of the crime:

> The evidence presented by the Commonwealth at trial relative to the identity of the perpetrator of the crimes was indeed circumstantial as no eyewitness testified to having seen [Appellant] prepare a bomb, place it outside of [Mr.] Jordan's apartment, or ignite it. Rather, the Commonwealth relied upon, *inter alia*, evidence of [Appellant's] expressed ill will toward [Mr.] Jordan, his threats of harming [Mr.] Jordan, [Appellant's] numerous searches of the internet in the weeks leading up to the blast about the sale of Tannerite, and his inquiries about how many pounds of it would fit in a five-gallon bucket, how many pounds of Tannerite was deadly, how much [FPE] could penetrate a human skull, and how much [FPE] did mortar fireworks have. Additionally, the Commonwealth relied upon proving the perpetrator's identity with evidence of [Appellant's] purchases of the trackers and tracker subscriptions, his following the movements of [Mr.] Jordan so to know [Mr.] Jordan's schedule including when he would leave his apartment for work, the location history of [Appellant's] phones, [Appellant's] theft of [Mr.] Jordan's security camera, the evidence found on his drill, his driving in the direction of [Mr.] Jordan's apartment in the early morning

immediately prior to the blast, his initial denial of having left his apartment before such time that day, and the white car seen quickly leaving the blast area.

(Trial Court Opinion, 3/26/25, at 14). Viewed in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the Commonwealth presented sufficient evidence to establish Appellant's identity as the perpetrator of the crimes beyond a reasonable doubt. **See Dunkins, supra**. Following our independent review of the record, we agree with counsel that the appeal is frivolous. **See Dempster, supra**; **Palm, supra**. Accordingly, we affirm and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw is granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/19/2026